# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SAMUEL GALBRAITH**                                          **CIVIL ACTION NO.**

**VERSUS**                                                              **19-181-JWD-EWD**

**TIMOTHY HOOPER, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 9, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SAMUEL GALBRAITH**                                    **CIVIL ACTION NO.**

**VERSUS**                                              **19-181-JWD-EWD**

**TIMOTHY HOOPER, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the application of Petitioner Samuel Galbraith ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. There is no need for oral argument or for an evidentiary hearing. As the Louisiana Board of Pardons and Parole violated Petitioner's due process rights when it arbitrarily and without notice rescinded his parole in violation of Louisiana's statutory and administrative rules, it is recommended that Petitioner's habeas application be granted. Additionally, because the facts are clear that the Parole Board did not rescind Petitioner's parole for a reason permitted under the applicable statutes, it is recommended that Petitioner be released within thirty (30) days, subject to the parole conditions set forth by Parole Board in its original decision on November 3, 2016.

## I.    PROCEDURAL HISTORY

On February 1, 2000, Petitioner was charged in the Thirtieth Judicial District Court for the Parish of Vernon with first degree murder and attempted aggravated rape of Karen Hill, perpetrated on November 21, 1988.[1] On February 3, 2000, Petitioner pled guilty to manslaughter and attempted aggravated rape, receiving a total sentence of seventy-one (71) years.[2] The sentences were to run consecutively and were subject to diminution for good behavior. On November 16,

---

[1] R. Doc. 15-1, pp. 104-05.
[2] R. Doc. 15-1, p. 106.  Specifically, Petitioner received a sentence of twenty-one (21) years for manslaughter and fifty (50) years for attempted aggravated rape.

2000, James Hill ("Hill"), the surviving spouse of the victim, completed a *Louisiana Department of Public Safety and Corrections Victim/Witness Notification Request Form*, asking for notification by the Louisiana Board of Pardons and Parole ("Parole Board") when a hearing is granted.[3] The record does not contain a similar form from any other individuals.

Sometime in the spring of 2016 Petitioner filed an Application for Parole.[4] On July 7, 2016, the Parole Board sent two notification letters regarding Petitioner's upcoming October 13, 2016 parole hearing. The first letter went to Hill at the Texas address provided on his Notification Request Form.[5] The second letter went to Jessie McWilliams ("McWilliams"), the victim's mother, at an incorrect address in Albany, New York.[6] The October 13, 2016 parole hearing never occurred because Petitioner's attorney requested a continuance, which was granted.[7] The hearing was reset to November 3, 2016.[8]

New notification letters were sent to Hill and McWilliams advising of the hearing on November 3, 2016.[9] This time, the letter to McWilliams went to her correct address in Albany, Illinois.[10] Hill and McWilliams were also asked to provide a statement for the pre-parole investigation report.[11] The pre-parole investigation report, dated October 17, 2016, contains statements from Hill and McWilliams opposing parole.[12] The pre-parole investigation report also contains statements from the Vernon Parish District Attorney's Office, the Vernon Parish Sheriff's

---

[3] R. Doc. 15-2, p. 213.
[4] R. Doc. 15-1, pp. 226-296. Petitioner's parole application is undated.
[5] R. Doc. 15-1, p. 222.
[6] R. Doc. 15-1, p. 219.
[7] R. Doc. 15-2, p. 198. The request to continue the October 13, 2016 hearing was due to Petitioner's attorney's scheduling issues, not any issue related to notification.
[8] *Id.*
[9] R. Doc. 15-1, pp. 213-18.
[10] R. Doc. 15-1, pp. 213-15. The letter to Hill went to the Texas address provided on his Notification Request Form.
[11] R. Doc. 15-1. pp. 217, 214.
[12] R. Doc. 15-1, pp. 34-49.

Office, and the Vernon Parish sentencing judge opposing parole.[13] The Parole Board also received a letter from the Vernon Parish District Attorney's Office advising that it "strongly object[ed]" to parole,[14] and a detailed letter from Hill about the impact of his wife's murder and his objection to parole.[15]

At the November 3, 2016 parole hearing, Chairperson Cheryl Renatza ("Renatza"), Jim Wise, and Pearl Wise unanimously voted to grant Petitioner parole. Among the reasons noted were, "good support," "good plan," "good conduct," "good programs," "has emp[loyment] plan," "taken all programs," and "will be a tax-payer and not a tax burden."[16] According to the Pardon Board Decision Form, dated November 3, 2016, Petitioner's release was conditioned upon approval of residence, a low Static99 Score, and approval of out-of-state plan.[17] Neither Hill nor McWilliams attended the November 3, 2016 hearing, but each was contacted by someone from the Department of Corrections and notified of the decision.[18]

Shortly after parole was granted, the District Attorney of Vernon Parish, Asa Skinner ("Skinner"), began contacting the Parole Board to express his outrage at the decision to grant parole. Skinner sent a letter on November 15, 2016,[19] two letters on November 30, 2016,[20] and a letter on January 9, 2017.[21] Skinner requested the Parole Board reconsider its decision. On February 2, 2017, Renatza responded to Skinner's correspondence and advised that the Parole

---

[13] R. Doc. 15-1, p. 36.
[14] R. Doc. 15-1, p. 49.
[15] R. Doc. 15-1, p. 39.
[16] R. Doc. 15-2, p. 178.
[17] R. Doc. 15-2, p. 177.
[18] R. Doc. 15-1, p. 225.
[19] R. Doc. 15-2, p. 190.
[20] R. Doc. 15-1, pp. 28-29; R. Doc. 15-2, pp. 186-189. One of Skinner's November 30, 2016 letters contains an "investigative summary" from retried chief detective, Marvin Hilton, who provides his opinion that Galbraith was responsible for two unsolved murders in Vernon Parish. Galbraith was never charged with either of these murders. R. Doc. 15-2, pp. 186-189.
[21] R. Doc. 15-2, p. 191.

Board unanimously voted to grant parole based on suitability for release and could not reconsider its decision to grant parole because the information Skinner provided did not meet the criteria for rehearing based on Parole Board policy.[22]

McWilliams wrote to Skinner on November 18, 2016. In that letter McWilliams states that she was contacted by phone to provide a statement in anticipation of the parole hearing because her "paperwork had been sent to New York so there would not be enough time for me to be at the hearing….".[23] McWilliams also contacted the Parole Board requesting they reconsider their decision.[24] Skinner and McWilliams also gave interviews to the press expressing disagreement with the Parole Board's decision to grant Petitioner's parole.[25]

In early April 2017, Parole Board and Department of Corrections personnel made the final preparations for Petitioner's release.[26] On April 10, 2017, Mary Fuentes of the Parole Board sent an email to Deputy Executive Counsel to Louisiana Governor John Bel Edwards expressing her concern regarding a news story that was set to air on April 13, 2017 regarding Galbraith's parole.[27] On April 11, 2017, Renatza executed a "Single Member Action Sheet," unilaterally adding electronic monitoring as a condition of Petitioner's parole.[28]

On April 20, 2017, three days before Petitioner's scheduled release date, the Parole Board received notice that Texas accepted the electronic monitoring conditions and issued a certificate of parole signed by Renatza with a release date of April 23, 2017.[29] On April 21, 2017, two days

---

[22] R. Doc. 15-1, pp. 32-33.
[23] R. Doc. 15-1, pp. 185-186.
[24] R. Doc. 15-1, p. 184.
[25] R. Doc. 15-2, pp. 125-126.
[26] *See, e.g*, R. Doc. 15-2, pp. 130, 163-72, 253-54. Petitioner's release date was calculated as April 11, 2017 at one point. *See*, R. Doc. 15-2, pp. 168; 261.
[27] R. Doc. 7, p. 57.
[28] R. Doc. 15-2, p. 170. Petitioner's final release date was calculated as April 23, 2017. R. Doc. 15-2, pp. 192-93.
[29] R. Doc. 15-2, pp. 166-167.

before Petitioner was set to be released, Mary-Patricia Wray, a lobbyist with Top Drawer

Strategies, sent an email at 7:59 a.m. to Governor Edwards' Special Counsel, Erin Monroe Wesley:

> …I will have several background interviews on the crim justice reform bills today and so I will have a unique opportunity to (on background) deal with the story about Samuel Galbraith

> http://www.wbrz.com/news/investigative-unit-suspected-serial-killer-rapist-to-be-released-from-prison-sunday

> It looks like the Gov is not responding- is there a way to frame this story up that is helpful? Is there info reporters are missing? In my ignorance I truly do not know if there is a way to prevent re scheduled release on Sunday? I believe this is about to become a very problematic narrative, especially in the bulls [sic] dealing with parole eligibility- even though this is for a violent offense. Obviously I can separate it from the details of the bills but thought you might have some input on how to prevent the story from impacting the success of the legislation…[30]

The news story referred to in Wray's email aired on April 20, 2017 and included an

interview with Skinner, who stated that Petitioner was responsible for the murders of two

additional women in Vernon Parish, though Petitioner was never charged with either murder.[31]

The news story showed the pictures of the three parole board members who voted to grant

Galbraith parole and included interviews with Hill and with McWilliams, who stated her victim

notification went to Albany, New York instead of Albany, Illinois.[32]

Following the airing of the news story on April 20, 2021, Petitioner's records show a

notation on the "Hearing Docket Record" at 11:30 a.m. on April 21, 2017, "Rescind pending per

Mary F[uentes]."[33] A "Parole Board Action Sheet," signed only by Board member, Jim Wise, on

April 21, 2017, states "there may have been a techical [sic] irregularity to victim notice."[34]

---

[30] R. Doc. 1-12, p. 2.
[31] https://www.wbrz.com/news/investigative-unit-suspected-serial-killer-rapist-to-be-released-from-prison-sunday (last checked 3/6/2022).
[32] *Id*.
[33] R. Doc. 15-2, p. 155.
[34] R. Doc. 15-2, p. 158.

Petitioner was not released from prison on his scheduled release date of April 23, 2017. He was

provided with a letter from the Parole Board dated May 1, 2017, which stated:

> This correspondence is to advise you that the Parole Board has voted[35] to rescind
> the parole granted at your original parole hearing.
> This action was taken due to the following:
> We have been advised that Other.
> There may have been technical irregularities notifying the victim's family.
> You will be scheduled for another hearing on 08/03/2017.[36]

The Parole Board also issued the following press release:

> FOR IMMEDIATE RELEASE
> The Parole Board announced its decision this afternoon to rescind the parole of
> Samuel Galbraith, previously granted in November. In spite of numerous
> inconsistencies reported by Channel 2, the victim's mother did state during the
> interview that her parole hearing notification letter was mailed to an address in
> Albany, New York rather than Albany, Illinois
>
> Although Mrs. McWilliams did receive the required notice for the November parole
> hearing, because of the apparent procedural error which occurred with the initial
> victim notification, the Board will reschedule a subsequent parole hearing for
> Samuel so that Mrs. McWilliams and the District Attorney has the opportunity to
> fully participate in the process.[37]

After Galbraith's parole was rescinded, the news story was re-aired on April 21, 2017.[38] The

reporter credited Governor Edwards with the decision and stated that the reason for the rescission

was because McWilliams' notification was sent to Albany, New York.[39]

On June 16, 2017 Petitioner's counsel sent a letter to counsel for the Parole Board

contesting the rescission as contrary to Parole Board policy and contesting the factual basis of the

alleged technical irregularity; namely that McWilliams had, in fact, received notification of the

---

[35] There is no record of a "vote" to rescind Petitioner's parole. The only evidence in the record indicates that the rescission was done through the signature of Jim Wise only. R. Doc. 15-2, p. 158.
[36] R. Doc. 15-1, p. 65.
[37] R. Doc. 15-2, p. 124.
[38] https://www.wbrz.com/news/investigative-unit-suspected-serial-killer-rapist-to-be-released-from-prison-sunday (last checked 3/6/2022).
[39] Id.

hearing.[40] The letter also advised the Parole Board that neither of the two permissible reasons for rescission of parole were applicable: the offender had not violated the terms of his work release nor engaged in misconduct prior to release. The letter requested a discussion about these issues.[41] On July 7, 2017, Petitioner's counsel wrote a letter to Renatza advising that Petitioner was withdrawing from the upcoming August 3, 2017 hearing due to reasons stated in his June correspondence regarding the Parole Board's improper rescission and the failure of counsel for the Parole Board to respond to his correspondence or his phone calls.[42] As a result of the representations of Petitioner's counsel, the August 3, 2017 hearing was canceled.[43]

Petitioner filed a civil suit on July 26, 2017 in this Court, *Galbraith v. LeBlanc, et al.*, No. 17-cv-486, against James LeBlanc, Secretary of the Department of Public Safety and Corrections, and Sheryl Renatza, Chairperson of the Board of Pardons, in which he alleged violations of his Fourteenth Amendment rights to substantive and procedural due process.[44] Petitioner's civil suit alleges a cause of action under 42 U.S.C. § 1983 but challenges the legality of his confinement and seeks relief in the form reinstatement of the grant of parole and immediate release from prison.[45] The claims against LeBlanc were dismissed in the civil suit,[46] and Renatza filed a motion for summary judgment, in part alleging that this Court lacked jurisdiction to grant restoration of parole and release from custody because such relief is only properly sought in a writ of habeas corpus.[47] Shortly thereafter, on March 27, 2019, Petitioner filed the instant petition for habeas

---

[40] R. Doc. 15-1, pp. 25-26.
[41] *Id*.
[42] R. Doc. 15-1, p. 22.
[43] R. Doc. 15-1, p. 24.
[44] *Galbraith v. LeBlanc, et al*., Civil Action No. 17-486 (M.D. La.), R. Doc. 1.
[45] *Id.* at p. 10.
[46] *Galbraith*, 17-486, R. Doc. 27.
[47] *Galbraith*, 17-486, R. Doc. 42-1, pp. 5-6. Renatza's Motion for Summary Judgment was denied without prejudice. R. Doc. 53. Renatza's reurged Motion for Summary Judgment also raises the argument that "plaintiff's exclusive remedy to seek release from custody is through a writ of *habeas corpus*, which he has now filed and which petition is

corpus relief, alleging substantially the same facts as those alleged in the civil suit, and seeking release based on violations of his due process rights.[48] On September 30, 2020, this Court stayed Galbraith's civil suit, finding that the habeas petition involved the same legal issues.[49]

## II.    ARGUMENTS OF THE PARTIES

Petitioner contends that his claim is ripe for *de novo* review by this Court because the State of Louisiana lacks a procedural mechanism to challenge his parole rescission. Particularly, the only parole board action that is appealable under Louisiana's statutory scheme is the denial of a *revocation* hearing under La. R. S. 15:574.9. Because Louisiana lacks any form of a corrective process for parole recission, Petitioner argues that this Court may review his claim immediately under 28 U.S.C. § 2254(b)(1)(B)(i). Respondent, on the other hand, contends Petitioner's claim is unexhausted because he should have filed a petition for habeas corpus relief at the state level pursuant to La. C.Cr.P. Art. 351, citing *Sinclair v. Stalder*.[50] Respondent also asserts that Petitioner's claim is untimely because it was not filed within one year of the May 1, 2017 letter advising Petitioner that his parole had been rescinded.

On the merits, Petitioner argues that his Fourteenth Amendment due process rights have been violated because the Parole Board rescinded his parole based on an admittedly false reason— lack of proper notification of the hearing to the victim's family. Additionally, Petitioner contends that he had a liberty interest in parole based on Louisiana's statutory scheme because there are only two circumstances under which a parole grantee may have his parole properly rescinded: (1) violation of the terms of work release, or (2) misconduct prior to release. Because neither of these

---

pending before the Court in *Galbraith v. Hooper, et al.*, No. 19-181-JWD-EWD."  *Galbraith*, 17-486, R. Doc. 63, p. 1.
[48] R. Doc. 1.
[49] *Galbraith*, 17-486, R. Doc. 65.
[50] 2003-1568 (La. App. 1 Cir. 10/17/03), 867 So.2d 743.

circumstances applied to him, Petitioner claims a legitimate expectation of release, but the Parole Board never gave him notice or an opportunity to be heard before it rescinded his parole. Respondent contends that state and federal law establish that Petitioner had no protected liberty interest in the expectation of release on parole and the Parole Board had the authority to rescind Petitioner's parole without any due process at any time for any reason prior to his release.

Turning first to the procedural arguments, whether appropriately brought under § 2241 or under § 2254,[51] because there is no available state corrective process to challenge rescission of parole, exhaustion is not applicable to Petitioner's claims. Additionally, because Petitioner timely filed a § 1983 suit asserting the same facts and requesting the same relief requested here, the application is timely.

### III. EXHAUSTION

Although Title 28 U.S.C. § 2241 contains no statutory exhaustion requirement,[52] courts have imposed an exhaustion requirement if the claims asserted in a petition may be resolved on the merits in the state courts or by some other state procedure available to the petitioner.[53] "The exhaustion doctrine is applied to Section 2241(c) as a matter of comity and is based on federalism grounds to protect the state courts' important independent jurisdictional opportunity to address and initially resolve any constitutional issues arising within their jurisdiction and to limit federal interference in the state adjudicatory process."[54] Exhaustion under § 2241 or § 2254 requires that a petitioner "fairly present all of [her] claims" through the proper channels before pursing federal

---

[51] Petitioner asserts that his habeas application is brought under 28 U.S.C. § 2241 (R. Doc. 1, pp. 1 & 2), however, Petitioner also argues that exhaustion of his claims cannot occur because of the absence of a state corrective process under 28 U.S.C. § 2254(b)(1)(B)(i). R.Doc. 1, p. 2.

[52] See 28 U.S.C. § 2241(c)(3). For cases under § 2254, an applicant must exhaust remedies available in the courts of the State, unless "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

[53] Marshall v. Dep't of Corr., No. 18-6577, 2018 WL 6072246, at *7 (E.D. La. Oct. 26, 2018) (citations omitted).

[54] Marshall, 2018 WL 6072246, at *7, citing Johnson v. Cain, No. 15-310, 2015 WL 10438640, at *5 (E.D. La. June 4, 2015) (citing Dickerson v. Louisiana, 816 F.2d 220, 225 (5th Cir. 1987)).

habeas relief.[55] Exceptions to the exhaustion requirement apply only in "extraordinary circumstances" when remedies "are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action," and "[the petitioner] bears the burden of demonstrating the futility of administrative review."[56]

To meet his burden, Petitioner argues that there is an absence of state corrective process because "Louisiana law prohibits challenges to decisions of the Parole Board, except in cases of a parole revocation," citing La. R.S. 15:574.11 and *Sinclair v. Stalder*.[57] Petitioner also states that he attempted to exhaust his remedies by filing a grievance under the prison administrative remedy procedure, but his grievance was rejected.[58] Respondent argues that *Sinclair* does not preclude a petitioner from challenging a Parole Board recission via a state habeas application under La. Code of Criminal Procedure art. 351, notwithstanding that the cases, including *Sinclair*, would find such a challenge fails to state a cause of action.[59]

Louisiana's parole statutes allow for appeal of parole board actions in only one circumstance. La. Stat. Ann. § 15:574.11 provides (in pertinent part):

A. Parole is an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint, and the granting, conditions, or revocation of parole rest in the discretion of the committee on parole. **No prisoner or parolee shall have a right of appeal from a decision of the committee** regarding release or deferment of release on parole, the imposition or modification of authorized conditions of parole, the termination or restoration of parole supervision or discharge from parole before the end of the parole period, or the revocation or reconsideration of revocation of parole, **except for the denial of a revocation hearing under R.S. 15:574.9**.[60]

---

[55] *Dickerson*, 816 F.2d at 228 (§ 2241); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982) (§ 2254).

[56] *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (*per curiam*).

[57] 2003-1568 (La.App. 1 Cir. 10/17/03), 867 So.2d 743, 744, writ denied, 2003-3177 (La. 1/14/05), 889 So.2d 253. R. Doc. 1, p. 2.

[58] R. Doc. 1, p. 2.

[59] R. Doc. 6, pp. 3-4.

[60] (emphasis added).

The Louisiana First Circuit Court of Appeal in *Sinclair v. Stalder,*[61] relied on by both parties, explains that § 15.574.11(A) has been interpreted to mean that "there is no appeal of decisions of the [parole] board unless the procedural due process protections specifically afforded by the hearing provisions of 15:574.9 are violated. Pleadings challenging actions of the parole board other than failure to act in accordance with 15:574.9 should be dismissed by the district court. Louisiana Revised Statutes 15:574.9 deals with parole revocations, not with denials of release on parole. Therefore, there is no statutory basis for Sinclair to seek review of the parole board's decision denying him early release on parole."[62] In *Sinclair*, the petitioner's state habeas petition was dismissed for failure to state a cause of action.

Had Petitioner attempted to challenge recission of his parole through the state court system, his pleadings would have been dismissed as directed in *Sinclair* because he was not denied a parole revocation hearing, which is the only permissible basis to obtain review of a Parole Board decision under La. R.S. § 15:574.11. Louisiana's statutory scheme effectively deprived Petitioner of a procedure to challenge the actions of the Parole Board in rescinding his parole.[63] Without a mechanism to exhaust, there can be no failure to exhaust. Accordingly, Petitioner's claims are ripe for *de novo* review with this Court.[64]

## IV. TIMELINESS

Petitioner has asserted his habeas claim under 28 U.S.C. § 2241. A petition for writ of habeas corpus that "attacks the manner in which a sentence is carried out or the prison authorities'

---

[61] 2003-1568 (La. App. 1 Cir. 10/17/03), 867 So.2d 743.

[62] *Id.* at 744.

[63] Although Respondent takes a different position now, the response to Petitioner's administrative grievance also seems to acknowledge the futility of Petitioner pursuing his claim in state court: "REJECTED: Your request has been rejected for the following reason(s): PARDON AND PAROLE BOARD DECISIONS UNDER LOUISIANA LAW, DECISIONS OF THESE BOARD ARE DESCRESIONARY [sic] AND MAY NOT BE CHALLENGED." R. Doc. 1-1, p. 2.

[64] *See Panetti v. Davis*, 863 F.3d 366, 374–75 (5th Cir. 2017) ("…where, as here, the state courts have not reached the merits of a petitioner's claims, federal courts will review *de novo.* ").

determination of its duration," including parole issues, is properly considered under the general habeas authority of § 2241.[65] The one-year statute of limitations period has not been extended to Section 2241 petitions,[66] so it is not clear that Petitioner's application is untimely in the first instance.

Additionally, district courts may construe a Section 1983 complaint as a *de facto* habeas petition.[67] Petitioner filed his civil suit on July 26, 2017 against James LeBlanc, the Secretary of the Department of Public Safety and Corrections, and Sheryl Renatza, the Chairperson of the Louisiana Parole Board. The suit attacks the constitutional validity of the Parole Board's decision to rescind Petitioner's parole, seeks reinstatement of Petitioner's original parole decision, and requests Petitioner's immediate release from confinement.

Federal Rules of Civil Procedure, Rule 8(e) requires the Court to construe pleadings "so as to do justice." Here, the Parole Board has been on notice of the factual allegations, substance, and relief sought by Petitioner since suit was filed on July 26, 2017 and served on the Parole Board's Executive Director on August 1, 2017.[68] The Parole Board Chairperson entered an Answer and Affirmative defenses in that suit on October 17, 2017,[69] and filed a Motion for Summary Judgment on February 18, 2019 arguing that the Petitioner's claims sound in habeas corpus.[70] It is apparent

---

[65] *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000); *Richie v. Scott*, 70 F.3d 1269 (5th Cir. 1995) ("Habeas petitions challenging the revocation of the petitioner's parole sound under § 2241.").

[66] *United States v. Pipkins*, No. 07-163, 2012 WL 1019118, at * 1 (E.D. La. Mar. 26, 2012). ("However, unlike § 2554 habeas petitions, which are governed by the [AEDPA], § 2241 petitions have no statute of limitations."); *Hartfield v. Quarterman*, 603 F.Supp.2d 943, 948 (S.D. Tex. 2009); *Williams v. Louisiana's A.G.'s Office*, No. 07-603, 2007 WL 2915078, at *3 (E.D. La. Oct. 4, 2007). Section 2241 has not been amended to include a limitations period for filing a petition under that section. *Homayun v. Cravener*, 39 F.Supp.2d 837 (S.D. Tex. 1999), citing *Sandoval v. Reno*, 166 F.3d 225, 234 (3rd Cir. 1999) and *Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir. 1998). *See also, Rogers v. Robinson*, No. 14-1527, 2015 WL 4168696, at *4 (E.D. La. July 2, 2015); *Marshall*, 2018 WL 6072246, at *6; *Rodriguez v. Dir., Texas Dep't of Crim. Just., Corr. Institutions Div.*, No. 17-236, 2020 WL 8340059, at *3 (N.D. Tex. Dec. 21, 2020).

[67] *Thompson v. Montgomery*, No. 15-1092, 2015 WL 6454563, at *3 (E.D. La. Oct. 26, 2015), citing *Martinez v. Texas Court of Criminal Appeals*, 292 F.3d 417, 420 (5th Cir. 2002) (abrogated on other grounds).

[68] R. Doc. 4 (17-cv-486).

[69] R. Doc. 14 (17-cv-486).

[70] R. Doc. 42-1, p. 5 (17-cv-486).

from the record that the Louisiana Department of Corrections[71] was fully aware that Petitioner was seeking habeas corpus relief since July 26, 2017. Even assuming a one-year statute of limitation applies to Petitioner's claims, Petitioner's civil suit should be construed as a timely filed application for habeas corpus relief because it was filed less than three months after Petitioner was notified of the parole recission on May 1, 2017.[72]

## V.  MERITS REVIEW

Here, Petitioner was granted parole by the Parole Board but not yet physically released from prison (parole grantee). Petitioner contends that the Parole Board violated his substantive[73] and procedural Fourteenth Amendment due process rights when it arbitrarily and without notice rescinded his parole in violation of Louisiana's statutory and administrative rules. Respondent contends the Louisiana Supreme Court opinion in *Bosworth v. Whitley*[74] and the United States Supreme Court opinion in *Jago v. Van Curen*, [75] should guide our analysis in concluding Petitioner did not have a protectible liberty interest. The *Bosworth* opinion found that Louisiana state prisoners who were statutorily ineligible for parole had no protectible liberty interest in parole eligibility. Limited in its analysis to non-grantees, *Bosworth* is not instructive of whether Petitioner, as a parole grantee, had a protectible liberty interest.[76]

---

[71] The Parole Board is an arm of the Louisiana Department of Corrections. La. R.S. § 15:574.2.

[72] There is authority for the proposition that a § 1983 suit may be used to bring a due process claim challenging parole procedures. *See Wilkinson v. Dotson*, 544 U.S. 74 (2005) (concluding that state prisoners may bring actions challenging state parole procedures under § 1983, rather than exclusively under federal habeas corpus statutes).

[73] Because this report concludes that Petitioner's procedural due process rights were violated, whether there was a substantive violation is not reached. To find a substantive due process violation would require a finding of egregious behavior. *See Jordan v. Fisher*, 823 F.3d 805 (5th Cir. 2016) (substantive due process protection "comes into play when 'the behavior of the governmental officer is so egregious, so outrageous, that is may fairly be said to shock the contemporary conscience'…") (citation omitted).

[74] 627 So.2d 629 (La. 1993).

[75] 454 U.S. 14 (1981).

[76] *Id.* at 633 (internal citations omitted).

13

In *Jago,*[77] the United States Supreme Court reversed a decision from the Sixth Circuit Court of Appeals, which determined that the Ohio parole board improperly rescinded Jago's grant of "shock parole" without a hearing after discovering that he had falsified information in his parole interview.[78] In reversing the Sixth Circuit, the Supreme Court found that Ohio law unambiguously left any early release "wholly within the discretion of the" Ohio parole authorities and allowed that decision to be exercised at any time until release."[79]  Because *Jago* does not deal with statutory limitations on the discretion of the parole board, it is likewise not instructive.

In *Wolff v. McDonnell*,[80] which was decided before *Jago*, the Supreme Court recognized that a liberty interest is protected even when that liberty interest is not created by the Constitution. Because Nebraska law provided that prisoners could only lose good time credits if they were guilty of serious misconduct, the Supreme Court found that a liberty interest attached so as to give rise to Due Process protections:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing 'in every conceivable case of government impairment of private interest.' *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that

---

[77] 454 U.S. 14 (1981).
[78] *Van Curen v. Jago,* 641 F.2d 411, 415 (6th Cir. 1981).
[79] *Jago*, 454 U.S. at 20-21.
[80] 418 U.S. 539 (1974).

the state-created right is not arbitrarily abrogated. This is the thrust of recent cases in the prison disciplinary context.[81]

The Fifth Circuit has applied *Wolff* to find a state-created liberty interest, for example, in the revocation of good-time credit.[82] In *Jackson v. Cain*,[83] the Fifth Circuit reversed a grant of summary judgment dismissing a prisoner's claim that he was deprived of good-time credits without due process. The court in *Jackson* recognized that the Supreme Court has determined that "a state can create a protected liberty interest by establishing sufficiently mandatory discretion-limiting standards or criteria to guide state decision makers"[84] and went on to quote *Vitek v. Jones*, *supra*:

> If the state grants a prisoner a right or expectation that adverse action will not be taken against him except on the occurrence of specific behavior, "the determination of whether such behavior has occurred becomes critical, and the minimal requirements of procedural due process appropriate for the circumstances must be observed."[85]

Finally, the court found "this Court has held that a prisoner challenging his change in classification and transfer to administrative segregation stated a due process claim if he could show that Texas Department of Corrections regulations 'authorized his transfer to administrative segregation only for specified reasons' and the reason he was transferred was not one so specified."[86]

---

[81] *Wolff*, 418 U.S. at 557.
[82] *Keenan v. Bennett*, 613 F.2d 127, 129-30 (5th Cir. 1980), citing *Wolff*, 418 U.S. at 557 ("Revocation by state prison authorities of good-time credit must be measured against the requirements of the Fourteenth Amendment's Due Process Clause.")
[83] 864 F.2d 1235 (5th Cir. 1989)
[84] *Jackson*, 864 F.2d at 1250, citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Hewitt v. Helms*, 459 U.S. 460, 470–71 (1983); *Vitek v. Jones*, 445 U.S. 480, 488–89 (1980); *Green v. McKaskle*, 788 F.2d 1116, 1125 (5th Cir. 1986); *Lewis v. Thigpen*, 767 F.2d 252, 261–62 (5th Cir. 1985); *Parker v. Cook*, 642 F.2d 865, 867, 876 (5th Cir. Unit B, April 1981).
[85] *Id.*, quoting *Vitek v. Jones*, 445 U.S. at 490–91. *See Hewitt v. Helms*, 459 U.S. at 470–71; *Dzana v. Foti*, 829 F.2d 558, 560. (5th Cir. 1987).
[86] *Id.*, citing *Green*, 788 F.2d at 1125.

*Madison v. Parker*,[87] related to Texas statutes authorizing good-time credit, is also instructive.  In *Madison*, after noting that the Constitution does not guarantee good time credit, but that some states choose to create such a right, the Fifth Circuit stated:

> When a state creates a right to good time credit and recognizes that its revocation is an authorized sanction for misconduct, a prisoner's interest therein is embraced within the Fourteenth Amendment "liberty" concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In Texas, a prisoner may be awarded good conduct time based on his or her specific behavior in various vocations. Tex.Gov.Code Ann. § 498.003(a) (Vernon 1996). If an inmate commits an offense or violates an institutional rule during the course of his confinement, the Director of the Texas Department of Criminal Justice—Institutional Division ("TDCJ–ID") is empowered to forfeit all or any part of the inmate's accrued good time. Tex.Gov.Code Ann. § 498.004(a) (Vernon 1996). **Once an inmate acquires good time, the only way it can be revoked is if he or she commits an offense or violates an institutional rule**.[88]

While it is true that Louisiana has the discretion (as do all states) whether to authorize a parole system,[89] this case does not turn on that question.  Instead, this case turns on the narrower question of whether, once a parole decision has been made, the Parole Board can change that decision without affording the parole grantee Due Process protections. Neither Petitioner nor Respondents have cited any case, state or federal, addressing whether *Louisiana's* parole statutes confer a parole grantee a protectible liberty interest under the circumstances. The issue appears to be one of first impression. Accordingly, we must examine Louisiana's parole statutes and

---

[87] 104 F.3d 765 (5th Cir. 1997).

[88] *Madison*, 104 F.3d at 768 (emphasis added).

[89] *Trujillo v. United State*s, 377 F.2d 266, 269 (5th Cir. 1967) (parole is … a matter of legislative grace), citing *Smith v. United States*, 324 F.2d 436, 441(D.C. Cir. 1963); *see also*, *Stevenson v. Louisiana Bd. of Parole*, 265 F.3d 1060 (5th Cir. 2001) (the Louisiana statutes do not give rise to a constitutionally protected liberty interest in parole release) (citation omitted).

administrative rules to determine whether they create a liberty interest for a parole grantee that gives rise to due process protections in the context of recission.

Louisiana's system of parole is set out in La. R.S. 15:574.2, *et seq.* Parole is an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint.[90] A Board of Parole is established within the Department of Public Safety and Corrections (DPSC) and is vested with the authority to determine "the time and conditions of release on parole" for offenders sentenced to imprisonment and confinement in any correctional or penal institution in this state.[91] The granting, conditions, or revocation of parole rests in the discretion of the Parole Board.[92]

The version of La. Admin Code, tit. 22, Pt XI, § 504 ("General Procedures") in effect on April 21, 2017, read as follows (in pertinent part):

> K. Upon notification by the secretary of the Department of Public Safety and Corrections that an offender has violated the terms of work release granted under § 311 or has engaged in misconduct prior to the inmate's release, the committee may rescind its decision to grant parole. In such cases, the inmate shall promptly receive another parole hearing.

Petitioner's parole was rescinded through "Single Member Action," which is authorized by La. Admin. Code Pt XI, §513. The version of this statute in effect on April 21, 2017, read as follows (in pertinent part):

> 3. The duty officer may rescind parole as provided in § 505.L, pending another parole hearing.[93]

---

[90] La. R.S. 15:574.11(A).
[91] La. R.S. 15:574.2(A) and (D)(1).
[92] La. R.S. 15:574.11(A).
[93] The Board retains authority to add or remove parole conditions under § 513.

Due to an apparent statutory drafting error, § 505.L did not exist on April 21, 2017.[94] It was repealed in 2015. The repealed version was identical to §504.K, above:

> L. Upon notification by the secretary of the Department of Public Safety and Corrections that an offender has violated the terms of work release granted under § 311 or has engaged in misconduct prior to the inmate's release, the committee may rescind its decision to grant parole. In such cases, the inmate shall promptly receive another parole hearing.[95]

Louisiana's parole board regulations in effect on April 21, 2017, permitted the Parole Board to rescind parole only in the following two circumstances: (1) violation of the terms of work release, and (2) misconduct prior to release. When a Parole Board member unilaterally authorized the recission of Petitioner's parole on April 21, 2017, the stated reason was "Other" and "There may have been techical [sic] irregularity to victim notice."[96] This was also the reason provided to Petitioner in the May 1, 2017 correspondence advising him of the recission.[97] It is undisputed that neither of the two statutory reasons for rescission applied to Petitioner.  Additionally, while the record is clear that McWilliams and Hill received timely notice of the November 3, 2016 parole hearing,[98] lack of victim notification was also not a permissible reason to rescind Petitioner's parole under the statutory scheme in effect on April 21, 2017. In August of 2019, the statute was amended to include victim notification errors as a permissible reason for recission.[99] This subsequent change in the law is an additional indication that the Parole Board did not have the authority on April 21, 2017, to rescind Petitioner's parole for a victim notification error, even if it had occurred.

---

[94] The absence of §505.L on April 21, 2017 may have resulted in lack of authority to unilaterally rescind Petitioner's parole by "Single Member Action." This question need not be resolved as, even assuming the authority existed, the expressly permitted statutory reasons for recission were inapplicable to Petitioner.

[95] 2013 LA REG TEXT 307903 (NS).

[96] R. Doc. 15-2, p. 158.

[97] 15-1, p. 65.

[98] The version of La. Admin Code, tit. 22, Pt XI, § 510 in effect on November 3, 2016 only required the notification be sent to Hill, and only thirty days prior to the parole hearing.

[99] La. Admin Code, tit. 22, Pt XI, § 504 (eff. August 19, 2019 to January 20, 2020).

Like the conclusion of the Fifth Circuit in *Jackson v. Cain*,[100] and *Madison v. Parker*,[101] because the State of Louisiana created a parole system and limited the right to rescind parole to only two circumstances, a parole grantee, such a Petition, had a constitutional expectation that he would be released unless he committed one of the two violations for which his parole could be rescinded.[102] The cases located through independent research in which the district courts, or the Fifth Circuit, have found that there was no due process protection where the process of parole had not reached release, are distinguishable.  In *Sexton v. Wise*,[103] the Fifth Circuit reversed the district court decision granting a writ of habeas corpus, unless a hearing with sufficient due process was held on the recission of Sexton's parole.  While the *Sexton* opinion specifically states that, "Until a parole is finalized, no constitutional protections associated with a parole revocation embrace the intended parolee,"[104] the decision was based on the fact that, unlike the Louisiana statutes at issue in this case, the applicable regulations afforded the parole board discretionary power to rescind future parole.[105]

In *Reneau v. Dretke*,[106] the Southern District of Texas dismissed the petitioner's § 2254 habeas application as frivolous and for failure to state a claim upon which relief could be granted. There, the petitioner challenged the decision of the Texas Board of Pardons and Paroles to rescind his previously granted parole release without proper notice and a hearing.  The court relied on

---

[100]  864 F.2d 1235 (5th Cir. 1989)
[101] 104 F.3d 765 (5th Cir. 1997).
[102] *See also, Green v. McCall*, 822 F.2d 284 (2nd Cir. 1987) (holding that parole grantees had protectible liberty interest entitling them to due process where the parole commission had limited authority to rescind parole).
[103] 494 F.2d 1176 (5th Cir. 1974)
[104] *Sexton*, 494 F.2d at 1178.
[105] The applicable provision stated:
    § 2.20 Release; discretionary power of Board.
    When an effective date has been set by the board, release on that date shall be conditioned upon continued good conduct by the prisoner and the completion of a satisfactory plan for his supervision. The Board may, on its own motion, reconsider any case prior to release and may reopen and advance, postpone, or deny a parole which has been granted.  The Board may add to or modify the conditions of parole at any time.
[106] No. 05-3413, 2005 WL 2488421 (S.D. Tex. Oct. 6, 2005).

controlling precedent that established that Texas statutes do not create a liberty interest in parole release.[107]  However, Tex. Gov't Code § 508.145, the statute at issue, did not contain the same limitations on parole recission as those at issue in this case.  To the contrary, the statute in *Reneau* is silent as to the bases for recission.  The *Reneau* court also relied on the language in *Sexton* that there are no constitutional protections for a parole grantee until release,[108] which is distinguishable, as explained above.

The court's decision in *Davis v. Johnson*[109] is likewise distinguishable.  In that case, after noting the continuum of increasing liberty interests from one who only has a desire for parole (no liberty interest), to one who has actually been set free on parole (liberty interest), the Northern District of Mississippi noted that a parole grantee who has not been released falls in between these on the continuum.[110]  Relying on the Supreme Court's decision in *Jago*, the court found that "parolees who have not yet been released do not have the right to a hearing on the rescission of parole."  As discussed above, the Supreme Court's decision in *Jago* was based on the unfettered discretion given to the Ohio parole board under Ohio statutory regime.  The *Davis* court did not analyze applicable Mississippi law to determine whether those statutes afford similar discretion; however, like Texas, the Mississippi parole statute does not include any specific limitations on recission.[111]

While it is true that Louisiana's parole statutes do not create a liberty interest in the granting of parole, once parole has been granted, the Parole Board's discretion to rescind that parole was statutorily limited to an objective, fact-based finding that Petitioner had either: (1) violated the

---

[107] *Reneau*, 2005 WL 2488421, at * 1, citing *Johnson v. Rodriguez*, 110 F.3d 299, 305 (5th Cir. 1997).
[108] *Reneau*, 2005 WL 2488421, at * 1.
[109] 205 F.Supp.2d 616 (N.D. Miss. June 20, 2002).
[110] *Davis*, 205 F.Supp.2d at 619.
[111] Miss. Code Ann. § 47-7-17.

terms of his work release, or (2) engaged in misconduct. Neither statutory basis was even argued, much less established in April 2017. Under the Fourteenth Amendment, Petitioner was entitled to notice and a meaningful opportunity to be heard before rescinding his parole,[112] which did not occur.[113]

Petitioner asks the Court to remedy the constitutional violation through reinstatement of his original parole and release from confinement. In federal habeas cases, district courts have "broad discretion in conditioning a judgment granting habeas relief."[114] "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require."[115] "[H]abeas corpus is, at its core, an equitable remedy."[116] "[R]emedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."[117]

The competing interest at stake in this matter would be the Parole Board's right to conduct a recission hearing.  However, the only statutory bases for recission at the relevant time were that the parolee violated the terms of his work release or engaged in misconduct.  The facts are undisputed, and the record is clear--Petitioner's parole was not rescinded for either of these reasons.  Because remand to the Parole Board for a decision on an undisputed fact would be an unwarranted exercise in futility, the appropriate remedy under the unique circumstances of this

---

[112]  Because it is not necessary to the resolution of this matter, this Report does not seek to define the contours of the process that would have been due at a pre-deprivation recission hearing. At a minimum, due process would require notice and a meaningful opportunity to be heard.

[113] It appears from the record that another parole hearing was conducted on May 27, 2020.  R. Doc. 15-1, pp. 2-7. This is not sufficient to correct the procedural Due Process violation.  *See Fuentes v. Shevin*, 407 U.S. 67, 81-82 (1972) ("If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented."). Additionally, a new parole hearing was not the appropriate remedy where, as here, none of the statutory bases for parole recission, as of April 21, 2017, existed.

[114] *Hilton v. Braunskill,* 481 U.S. 770, 775 (1987).

[115] *Id.* (quotation omitted).

[116] *Schlup v. Delo*, 513 U.S. 298, 319 (1995).

[117] *United States v. Morrison,* 449 U.S. 361, 364 (1981).

case is release, subject to the parole conditions set forth by Parole Board in its original decision on November 3, 2016. Accordingly,

**IT IS RECOMMENDED** that Petitioner's application for writ of habeas corpus[118] be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Petitioner be released on parole within thirty (30) days, subject to the original conditions of his parole granted on November 3, 2016 found in R. Doc. 15-2, p. 177, including: "approval of residence," "low static 99 score," "approval of out of state plan," "no contact with victims or family," "no travel to Louisiana without approval of the parole office," and "perform community service speaking to at risk youth twice per year."

Signed in Baton Rouge, Louisiana, on March 9, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[118] R. Doc. 1.